IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 14-cv-03205-RBJ

ANDREW PLANCARTE,

      Applicant,

v.

JAMES FALK, Warden,
JOHN W. SUTHERS, the Attorney General of the State of Colorado, and
RICK RAEMISCH, the Executive Director of the C.D.O.C.,

      Respondents.

---

ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Applicant, Andrew Plancarte, has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 challenging the validity of his criminal conviction in the District Court of Denver County, Colorado.   Respondents have filed an Answer (Docket No. 31), and Applicant has filed a Reply (Docket No. 35).   Having considered the same, along with the state court record, the Court will deny the Application.

## I.  BACKGROUND

In August 2006, Applicant was convicted of first degree burglary, second degree kidnapping, and two counts of third degree assault by a Denver District Court jury in Case No. 04CR2929 .   (Docket Nos. 1, at 5; 15-1, at 3-4).   He was sentenced to an aggregate prison term of 15 years with the Colorado Department of Corrections. (Docket No. 1, at 4-5).   Applicant's   convictions and sentences were affirmed on direct appeal in *People v. Plancarte*, 232 P.3d 186, 189-91 (Colo. App. 2009) (*Plancarte I*). (Docket No. 15-2).   The state appellate court summarized the relevant facts as follows:

On the evening of March 25, 2004, two separate attacks on female

students occurred within thirty minutes of each other near the University of Denver campus.   At approximately 7:45 p.m., B.T. was walking home from campus when a man jogged past her, turned around, looked at her, and continued jogging.   B.T. entered her residence a few houses away through a back door, and a short time later, a man entered her home through that door and punched her.   B.T. recognized him as the same man who had jogged past her.   The man pulled B.T. out the back door, threw her to the ground, repeatedly punched her, and then fled.   At approximately 8:00 p.m., M.S. was also walking home from campus. M.S. turned around after hearing the sound of someone coming up behind her.   A jogger grabbed her waist, put a hand over her mouth, and punched her in the head and in her side.   They fell to the ground and the man tried to strangle her.   M.S. was able to scream, and the man ran off.

Shortly after the attacks, B.T. and M.S. each gave a statement to the police and made a composite sketch of her attacker using a computer program at the police station.   Each victim's description of her attacker, and each composite, appeared to pertain to the same man.   The police released composites to the media and received numerous calls and tips regarding potential suspects.   An anonymous caller advised police that the composite matched defendant's description.

Based on the above evidence, defendant was arrested on May 26, 2004, and charged with one count of first degree burglary, two counts of second degree kidnapping, and two counts of third degree assault.   Prior to trial, defense counsel filed a motion to suppress evidence of the out-of-court identifications of defendant by B.T. and M.S.   At a hearing on the motion to suppress, the trial court heard testimony from B.T. and M.S., viewed video CDs of the identification process, and viewed the twenty photos.   It then denied defendant's motion, finding that the photographic array and identification procedure were not suggestive.

*Plancarte I*, 232 P.3d at 189.   The Colorado Supreme Court denied Applicant's petition for certiorari review on June 28, 2010.   (Docket No. 15-3).

On March 24, 2011, Applicant filed a state post-conviction motion to correct an illegal sentence, pursuant to Colo. Crim. P. Rule 35(a), which was denied by the state district court on April 5, 2011.   (Docket No. 15-1, at 9).   Applicant did not appeal.

On August 31, 2011, Applicant filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule 35(c).   (*Id.*).   The state district court entered an order granting

2

the Rule 35(c) motion to the extent that the Court determined that his convictions for

third degree assault merged with his conviction for first degree burglary.   (*Id.*).   The

state court denied the remainder of Applicant's claims.   (*Id.*).   The Colorado Court of

Appeals affirmed the district court's order in *People v. Plancarte*, No. 11CA2433 (Colo.

App. Dec. 5, 2013) (unpublished) (*Plancarte* II)   (ECF No. 15-10).   Applicant's petition

for certiorari review to the Colorado Supreme Court was denied on September 8, 2014.

(Docket No. 15-11).

Applicant filed a § 2254 Application in this Court on November 25, 2014,[1] in

which he asserts eight claims for relief:

1. Applicant's consecutive sentences were imposed in violation of double jeopardy and the Eighth Amendment. (Docket No. 1 at 16).

2. Prosecutorial misconduct. (*Id.* at 21).

3. Applicant suffered a complete denial of trial counsel by virtue of his trial attorney's failure to sufficiently argue an alibi defense, which failure resulted from a conflict of interest, ignorance of the law, and inexperience. (*Id.* at 33).

4. The theory of defense instruction denied Applicant his right to be convicted only under a verdict of guilty beyond a reasonable doubt. (*Id.* at 37).

5. Ineffective assistance of appellate counsel. (*Id.* at 41).

6. The postconviction court erred in failing to hold an evidentiary hearing. (*Id.* at 44).

7. Applicant's right to due process was violated by the manner in which the police handled the photographic lineups. (*Id.* at 65).

8. Insufficient evidence. (*Id.* at 7).

---

[1]Mr. Plancarte filed a prior § 2254 Application in *Andrew T. Plancarte v. John Chapdelaine, Warden, et al.*, Case No. 11-cv-02901-LTB, which was dismissed without prejudice on April 19, 2012, for failure to exhaust available state court remedies.

In the Pre-Answer Response, Respondents conceded the timeliness of the Application under the AEDPA one-year limitation period set forth in 28 U.S.C. § 2244(d). (Docket No. 15, at 5-9).   Respondents further conceded that Mr. Plancarte exhausted state court remedies for claim three.   (*Id.* at 15).   Respondents asserted, however, that claim six did not invoke the Court's federal habeas jurisdiction (*id.* at 4-5), and that claims one, two, four, five, seven and eight were procedurally barred (*id.* at 15-17).

In a March 10, 2015 Order to Dismiss in Part, the Court agreed with Respondents' arguments as to claims one, two, four, five and six and dismissed those claims.   (Docket No. 23).   The Court concluded, however, that Applicant exhausted state court remedies for claims seven and eight.   (*Id.*).

The Court reviews the merits of claims three, seven and eight below under the AEDPA standard of review.   (*Id.*).

## II.  LEGAL STANDARDS

### A.  28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The applicant bears the burden of proof under § 2254(d).   *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.   *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).   In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."   *Id.* at 98.   Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."   *Id.* at 99.   Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."   *Id.* at 98.   In other words, the court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated."   *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).   Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."   *Id.* at 1178.   "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims."   *Id.*

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).   *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).   The threshold question the court must answer under § 2254(d)(1) is

whether the applicant seeks to apply a rule of law that was clearly established by the

Supreme Court at the time his conviction became final.   *See Williams v. Taylor*, 529

U.S. 362, 390 (2000).   Clearly established federal law "refers to the holdings, as

opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant

state-court decision."   *Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.   Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly

established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).

*See id.* at 1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of

that clearly established rule of federal law.   *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law
> if: (a) "the state court applies a rule that contradicts the governing law set
> forth in Supreme Court cases"; or (b) "the state court confronts a set of
> facts that are materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that] precedent."
> *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal
> quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at
> 405).   "The word 'contrary' is commonly understood to mean
> 'diametrically different,' 'opposite in character or nature,' or 'mutually
> opposed.'"   *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of
> clearly established federal law when it identifies the correct governing
> legal rule from Supreme Court cases, but unreasonably applies it to the
> facts.   *Id.* at 407-08.   Additionally, we have recognized that an
> unreasonable application may occur if the state court either unreasonably
> extends, or unreasonably refuses to extend, a legal principle from
> Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.   *See Williams*, 529 U.S. at 409-10.   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable."   *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.   In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).   In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."   *Id*.   Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."   *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."   *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the

7

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102.

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).   *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.   Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner   bears the burden of rebutting the presumption by clear and convincing evidence.   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"   *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## B.  *Pro Se* Litigant

Applicant is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts

8

that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle Applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. ANALYSIS

### A. Claim Three

In claim three, Applicant contends that his trial counsel was constitutionally ineffective in failing to present a sufficient alibi defense. (Docket No. 1, at 33). Specifically, he asserts that counsel failed to: (a) conduct an adequate investigation of an alibi defense and to secure videotapes of business premises that would have corroborated the defense; (b) tender a theory of the case instruction, but instead accepting the instruction proffered by the prosecution; and, (c) move for a judgment of acquittal on the basis of alibi. (Docket No. 1, at 33-37; *see also* No. 15-12, at 14, 22-33). Applicant further maintains that defense counsel labored under an actual conflict of interest that prevented counsel from adequately representing him at trial. (*Id.*).

To prevail on a claim of ineffective assistance of counsel (IAC claim), a habeas petitioner must show both that (1) his counsel's performance was deficient (i.e., that identified acts and omissions were outside the wide range of professionally competent assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Strickland v. Washington*, 466 U.S. 668 (1984).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).  "With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable."  *Strickland*, 466 U.S. at 693.

"Surmounting *Strickland*'s high bar is never an easy task." *Richter*, 562 U.S. at 105 (internal quotation omitted).  "Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult."  *Id.*  "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.*

In *Plancarte II*, the Colorado Court of Appeals reviewed Applicant's claim under the *Strickland* standard (Docket No. 15-10, at 4-5) and rejected it *in toto*.  The Court addresses each of the grounds relied on by the state appellate court below.

### 1.  video evidence

Defendant first contends that his trial counsel failed to adequately investigate his alibi defense and introduce the video tapes from a convenience store and a movie theater to prove that he was not in the vicinity of the university (where the attacks occurred) that day. We disagree.

In rejecting this argument, the district court found, and we agree, that defendant failed to establish prejudice from counsel's allegedly deficient performance. The record indicates that the prosecution did not dispute whether defendant went to the convenience store or the movie theater because those events did not correspond with the times that the attacks occurred.

In addition, counsel presented testimony from three witnesses to support defendant's alibi by testifying that defendant was with them the entire evening when the attacks occurred.

Therefore, because the videos would not have established defendant's whereabouts at the time the attacks occurred, there is not a reasonable probability that the result would have been different had counsel introduced them. Accordingly, because defendant failed to establish prejudice, the court did not err in denying his claim. [State case law citation omitted].

(*Id.*, at 6-7).

The state appellate court's factual finding that the prosecution did not dispute Applicant's presence at the convenience store and movie theater at the times testified to by Applicant's primary alibi witness are supported by the state court record.[2]   As such, defense counsel's failure to introduce the videotapes was not deficient performance.   Further, there is no reasonable probability that Applicant was prejudiced by defense counsel's conduct.

A defense witness testified that on the afternoon preceding the assaults, she and the Applicant went to a convenience store in Golden, and then to a movie theater to exchange some tickets.[3]   The witness further testified that she and the Applicant arrived back at her apartment in Denver at approximately 6:15 p.m. after completing these errands.[4]   The first assault occurred near the University of Denver campus at approximately 7:30-7:45 p.m.[5]   Defense counsel's failure to introduce videotape

---

[2] State Court R., 8/18/06 Trial Tr., at 105-08.

[3] State Court R., 8/17/06 Trial Tr. at 222-227.

[4] *Id.* at 227.

[5] *Id.*; 8/16/06 Trial Tr. at 31; 8/17/06 Trial Tr. at 8.

evidence to prove Applicant's whereabouts before he returned to an apartment in Denver more than one hour before the attacks occurred could not have affected the outcome of Applicant at trial.   Further, as the state appellate court found, three witnesses testified that Applicant was with them at the time the attacks occurred, thereby providing evidence of an alibi.[6]

The Court finds and concludes that the state appellate court's resolution of Applicant's IAC claim based on failure to introduce certain alibi evidence comported with *Strickland* and was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.   Therefore, Applicant is not entitled to habeas relief for subclaim 3(a).

## 2.   theory of the case instruction

Applicant next argues that trial counsel rendered deficient performance by failing to tender a theory of the case instruction, but instead accepting the instruction proffered by the prosecution.

Following closing arguments, defense counsel told the trial court that alibi was an affirmative defense which had not been included in the instructions and that Applicant was entitled to an instruction on it.[7]   The court and prosecutor indicated their belief that alibi was not an affirmative defense, but in an abundance of caution, the court provided the jury with an additional instruction that the prosecutor drafted stating:

> It is defendant's position that he was not present at the time and place where each crime is alleged to have been committed. The burden is upon the People to prove each and every element of each charge as explained

---

[6]*Id.*, 8/17/06 Trial Tr. at 227-30; 255; 266-68.

[7]*Id.*, 8/18/06 Trial Tr., at 117-18.

in Instructions No. 4, 10, 11, 12 beyond a reasonable doubt.[8]

The trial court then read the instruction to the jury and provided each juror with a copy

of it.[9]   Defense counsel did not object to the instruction or this procedure.[10]

In *Plancarte II*, the Colorado Court of Appeals rejected Applicant's claim on the

following grounds.

> Defendant contends that because counsel failed to submit her own theory of the case instruction and acquiesced in the prosecution's proposed instruction, her performance was deficient, and the result of the trial would have been different had she participated in the drafting of that instruction. We disagree.

> The district court found, and we agree, that the instruction properly informed the jury that defendant was asserting an alibi as a defense and that the prosecution had the burden to prove each element of each crime beyond a reasonable doubt. Moreover, defendant's allegation of prejudice does not indicate how the existing instruction was deficient. Therefore, his bare assertion that the result of the proceeding would have been different is insufficient to establish that he was prejudiced by counsel's allegedly deficient performance. [State case law citation omitted].

(Docket No. 15-10, at 7-8).

Under Colorado law, "a defendant is entitled to an instruction based on the

theory of defense of alibi if the record contains evidence of alibi and the theory is not

incorporated or included in other jury instructions."   *People v. Nunez*, 841 P.2d 261,

266 (Colo. 1992).   The alibi instruction given to the jury need not be one proffered by

the defense.   *See id.* at 265 (stating that "a trial court must cooperate with counsel to

correct an improper theory of defense instruction or draft an instruction that

---

[8] *Id.* at 119, 127-128.

[9] *Id.* at 130.

[10] *Id.* at 127-130.

incorporates the substance of a defendant's theory.*")

The jury instruction tendered by the prosecution and approved by the state trial court accurately described the defense theory of alibi.   Applicant's conclusory assertion that defense counsel should have tendered a separate instruction, without any explanation of why the prosecution's instruction was unsatisfactory, is insufficient to demonstrate prejudice.   *See Cummings v. Sirmons*, 506 F.3d 1211, 1233-1234 (10th Cir. 2007) (conclusory assertions of prejudice cannot establish an ineffective assistance of counsel claim). The Court thus finds that the state appellate court's resolution of Applicant's IAC claim was consistent with *Strickland*.   Therefore, Applicant is not entitled to federal habeas relief for subclaim 3(b).

### 3.   motion for judgment of acquittal

Applicant further contends that defense counsel was ineffective in failing to assert the Applicant's alibi as the basis for the motion for judgment of acquittal.

At trial, defense counsel moved for judgment of acquittal after the close of the prosecution's case, asserting that the witnesses' identifications were not reliable and failed to prove that Applicant was the attacker.[11]   Viewing the identification evidence in the light most favorable to the prosecution, the trial court denied the motion.[12]

In *Plancarte II*, the Colorado Court of Appeals concluded that Applicant could not establish that he was prejudiced by counsel's omission based on the following reasoning:

---

[11] State Court R., 8/17/06 Trial Tr., at 206.

[12] *Id.* at 207.

> . . . On direct appeal, a division of this court . . . concluded that there was sufficient evidence in this case . . . . *See Plancarte*, 232 P.3d at 191-92. Because the evidence was sufficient . . . , there is not a reasonable probability that the result of the proceeding would have been different had counsel . . . included defendant's assertion of his alibi defense in the initial motion for a judgment of acquittal . . . .

(Docket No. 15-10, at 9).

The Court finds that the state appellate court's resolution of Applicant's claim was a reasonable application of *Strickland.* Defense counsel's failure to raise alibi as a basis for judgment of acquittal at the close of the prosecution's case could not have affected the jury's verdict. In ruling on the motion, the trial court considered only the evidence presented in the prosecution's case. *See People v. Bennett,* 515 P.2d 466, 468-69 (1973). Evidence of alibi, which had not yet been presented by the defense, was irrelevant. Furthermore, even if defense counsel had renewed the motion for judgment of acquittal at the close of all the evidence, the Court has upheld, in claim eight, *infra*, the AEDPA, the Colorado Court of Appeals' determination that the evidence was sufficient to support Applicant's conviction.

Accordingly, Applicant is not entitled to federal habeas relief for subclaim 3(c).

### 4.   conflict of interest

Applicant also alleges in support of claim three that defense counsel failed to raise an adequate alibi defense because counsel labored under an actual conflict of interest. According to Applicant, this conflict "emerged from a latent sympathy for the alleged victims, in this, her initial criminal representation as, herself, a Denver University alumna; conversely harboring a loathsome aversion toward her own client as the accused assailant." (Docket No. 1, at 35).

In *Plancarte II*, the Colorado Court of Appeals determined the following:

15

> [O]ther than . . . a conclusory statement that counsel was biased against him because of her affiliation with the university that the victims attended, defendant has not provided any specific instance where counsel made a decision during the representation that was influenced by that relationship.
>
> Therefore, because defendant has not alleged specific instances where counsel made a decision based upon divided loyalties or divulged confidential communications, he has failed to establish that there was an actual conflict. [State case law citations omitted].   Accordingly, his claim fails.

(Docket No. 15-10 at 13-14).

To trigger Sixth Amendment concerns, there must be more than a potential conflict of interest or "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).   The ineffectiveness of counsel is presumed where counsel "'actively represented conflicting interests' and 'an actual conflict of interest adversely affected [the defense]   lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)).   However, where the asserted conflict of interest does not involve counsel's concurrent representation of multiple defendants, a habeas petitioner must make an affirmative showing of prejudice under *Strickland. See Mickens*, 535 U.S. at 176 (stating that it is "an open question" whether the holding in *Cuyler* applies outside the context of concurrent, multiple representation).

Applicant's conclusory allegation that counsel labored under a conflict of interest, without specific factual allegations to demonstrate an actual conflict, is insufficient. *See Peterson v. Timme*, No. 12-1436, 509 F. App'x 830, 832 (10th Cir. Feb. 6, 2013) (unpublished) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)).   Moreover, Applicant does not explain how counsel's alleged affiliation with the University of Denver prejudiced him at trial.   His assertion that defense counsel failed to present an

16

adequate alibi defense is refuted by the state court record.   Defense counsel called six witnesses to testify in support Applicant's alibi that he was at home with his daughter, her mother, and a friend at the time the assault occurred near the University of Denver campus.[13]   As the trial judge recognized in rejecting Applicant's post-trial complaints about counsel's performance, defense counsel provided Applicant "with a very aggressive, very assertive, very intelligent defense."[14]

The Court finds and concludes that the Colorado Court of Appeals' determination of Applicant's claim was consistent with federal law and was reasonable in light of the evidence presented in the state court proceeding.   Applicant's IAC claim based on an alleged conflict of interest lacks merit and will be dismissed.

### 5.   application of standards set forth in *United States v. Cronic*

Finally, the Court addresses Applicant's implicit argument that the state appellate court applied an incorrect legal standard in addressing his IAC claims under *Strickland*. (Docket No. 35, at 9-12; *see also* No. 1, at 33-37).   He contends that the IAC claims must be analyzed under the standards set forth in *United States v. Cronic*, 466 U.S. 648, 658-59 (1984).   (*Id.*).

In *Cronic*, the Supreme Court identified three extreme situations "so likely to prejudice the accused that the cost of litigating their effect in a particular case [under *Strickland*] is unjustified." *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Cronic*, 466 U.S. at 658-59); *see also Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010). Applicant attempts to invoke *Cronic's* first and second situations.   (Docket No. 35, at

---

[13] *See generally* State Court R., 8/17/06 Trial Tr., at 215-280.

[14] *Id.*, 10/23/06 Sentencing Hr. Tr., at 6.

9-11).[15]

In the first situation, prejudice is presumed where a defendant is denied counsel at a critical stage of his trial. *Cronic*, 466 U.S. at 659.

In the second situation, "a presumption of prejudice is warranted if 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'" *Hooks*, 606 F.3d at 724 (quoting *Cronic*, 466 U.S. at 659).   This means that the lawyer's failures must run throughout the entire proceeding, *Hooks*, 689 F.3d at 1186, and that the lawyer's performance "be so inadequate that, in effect, no assistance of counsel is provided." *Cronic*, 466 U.S. at 654 n. 11. *See also Bell,* 535 U.S. at 696-97 ("When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete.").

The Court finds that the circumstances of Applicant's case fail to trigger *Cronic's* presumption of prejudice.   As an initial matter, the state court record establishes that Applicant was not denied counsel at any stage of his trial.   Furthermore, as discussed in Section III.A.4, *supra*, Applicant failed to demonstrate in the state courts that his counsel labored under an actual conflict of interest.   In addition, the state court record shows that defense counsel subjected the prosecution's case to meaningful adversarial testing by presenting a vigorous alibi defense and thoroughly cross-examining the prosecution's witnesses regarding the victims' identification of Applicant as the perpetrator.   Accordingly, the Court finds that the state appellate court's resolution of

---

[15]The third situation requiring a presumption of prejudice arises when "the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance."   *Cronic*, 466 U.S. at 661. Applicant does not assert that the third situation is applicable to his state criminal proceeding.

Applicant's IAC claims under the *Strickland* standard, rather than the *Cronic* standard, comported with federal law.

## B. Claim Seven

In claim seven, Applicant asserts that the twenty-photo array from which the victims identified him was unconstitutionally suggestive because: (1) there was a "notable disparity" between the description of the attacker first given to the police and the characteristics of the men in the photo array; (2) Applicant's photo stood out from the others; and (3) the number of photographs was "excessive."   (Docket No. 1 at 65-71).

### 1.   controlling federal law

The Tenth Circuit has summarized the controlling legal principles as follows:

> When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances.

*United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir.1994) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)), and *Johnston v. Makowski*, 823 F.2d 387, 391 (10th Cir.1987)); *see also Manson v. Brathwaite*, 432 U.S. 98, 106-07 (1977) ("The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability."); *Watkins v. Sowders*, 449 U.S. 341, 347 (1981) (noting that "[i]t is the reliability of identification evidence that primarily determines its admissibility").   The two prongs of the due process inquiry must be analyzed separately, and "it is only necessary to reach the second prong if the court first

19

determines that the

array was impermissibly suggestive." *Sanchez*, 24 F.3d at 1262 (internal citation

omitted).

### 2. state court proceedings

Before trial, Applicant filed a motion to suppress the out-of-court identification

evidence, and any subsequent in-court identification.[16]   Following a hearing, the trial

court ruled that the photo array was not unduly suggestive.[17]

In *Plancarte I*, the Colorado Court of Appeals reviewed Applicant's claim under a

state law standard that was consistent with federal law, *see* 232 P.3d at 189-90, and

rejected it on the following grounds:

> The photographic array contained twenty photos . . . . We find
> nothing suggestive about the size of the array . . . .
> . . . .
>
> Defendant argues that although there were twenty photos in the
> array, seventeen of them were inconsistent with the victims' descriptions
> because the photos portrayed men who were light-skinned Anglos, had
> facial hair, or wore glasses. He contends that, of the two or three photos
> of clean-shaven Hispanic men, only defendant was wearing a brightly
> colored orange shirt.
> . . . .
>
> "[I]t is not required that all of the photographs in the array be
> uniform with respect to one given characteristic." *Bernal [v. People*], 44
> P.3d [184,] 192 [(Colo. 2002)]. However, an array that includes a photo
> "that is unique in a manner directly related to an important identification
> factor may be held impermissibly suggestive." *Bernal*, 44 P.3d at 192.
> Thus, "[s]imply being of a different race or ethnic group from others placed
> in a lineup does not necessarily make the lineup impermissibly
> suggestive, especially where . . . the other individuals had roughly the
> same characteristics and features of the accused." *Bernal*, 44 P.3d at 192

---

[16]State Court R., Court File, at 11-14.

[17]*Id.*, 1/6/06 Hrg. Tr., at 51-54.

(quoting *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987)). Nonetheless, "a photo array in which the individual characteristics of the accused, such as race, stand in stark contrast to the other photographs is impermissibly suggestive." *Bernal*, 44 P.3d at 192.

Because defendant raises concerns that some of the photos portray men with facial hair, we note that in *Bernal* the supreme court said "all that is required is that the 'photos are matched by race, approximate age, facial hair, and a number of other characteristics.'" *Bernal*, 44 P.3d at 191-92 (quoting *People v. Webster*, 987 P.2d 836, 839 (Colo. App. 1998)).
. . .

We [like the trial court] conclude that the photographic lineup was not unconstitutionally suggestive. On the night of the crime, B.T. described the attacker to police as a Hispanic or white male with a dark complexion, clean shaven with dark, slightly curly or wavy hair, and approximately 27 to 28 years of age. M.S. described the attacker as a Hispanic or white male with a dark complexion, in his thirties, approximately 5'10" with wide shoulders and a larger or protruding stomach, and clean shaven with dark hair.

Although as many as five of the men in the lineup were too light-skinned to fit the witnesses' descriptions of the perpetrator's race, the other fifteen photographs were of dark-complected men of possible Hispanic ethnicity. Unlike in *Bernal*, all photos show a similar blue background.

The majority of the men had no facial hair, and the presence of thin and short facial hair on the remaining men does not obscure their facial features, constitute a substantial difference, or tend to draw attention to defendant's photo. The facial hair on some photos in the array, which was presented to the victims just one week after the assaults, could easily be explained by the perpetrator's decision not to have shaved during that time. And in this regard, the lineup admonishment form presented before the victims viewed the array advised her to keep in mind that hair styles, beards, and mustaches are easily changed.

Defendant also argues that his photo stood out because he is wearing an orange shirt; however, the color was not bright and it did not render the array impermissibly suggestive. *See People v. Wilford*, 111 P.3d 512, 514 (Colo. App. 2004).

For these reasons, like the trial court, we conclude that the array was not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification.

21

(*Plancarte I*, 232 P.3d at 189-91).

### 3.   application of AEDPA standard of review

The Supreme Court has not articulated what factors are relevant to deciding whether an identification procedure is impermissibly suggestive.   Consequently, a state court's determination of the suggestiveness of the identification procedure cannot be regarded as contrary to clearly established Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003) (state court's determination that a particular sentence for a term of years did not violate Eighth Amendment not contrary to clearly established federal law where Supreme Court case law lacked clarity on particular factors to be employed).   A federal habeas court can set aside the state court's determination on the issue of whether the identification was impermissibly suggestive only where, presuming the correctness of the state court findings, it finds the determination to be objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Lockyer*, 538 U.S. at 76.

In determining whether a photo lineup is impermissibly suggestive, the Tenth Circuit considers a number of factors, including the size of the array, the manner of its presentation, and the details of the photographs.   *See United States v. Smith,* 156 F.3d 1046, 1050 (10th Cir.1998).

"[T]he number of photographs in an array is not itself a substantive factor, but instead is a factor that merely affects the weight given to other alleged problems or irregularities in an array."   *Sanchez*, 24 F.3d at 1262 (stating that "minor irregularities will be less noticeable and prejudicial as the number of photographs increases.").   In

this case, the number of photographs (20) does not indicate an impermissibly suggestive identification procedure.

Second, Applicant has not challenged the manner in which the photographic array was presented, and the Court's independent review of the state court record reveals no cause for concern.

And, finally, with regard to the details of the photographs, the Court finds that fifteen of the twenty individuals were reasonably matched by race, approximate age, and hair type.[18]   As such, the fact that five of the individuals depicted were too light-skinned to be consistent with the victims' descriptions did not render the array impermissibly suggestive.   Further, differences in facial hair between the photographed individuals did not render the array unnecessarily prejudicial.   *See, e.g., United States v. Thurston*, 771 F.2d 449, 452-53 (10th Cir.1985) (finding identification procedure not unduly suggestive where defendant was the only one in six photographs to have a beard and whose hair was braided); *United States v. Shoels*, 685 F.2d 379, 385 (10th Cir.1982) (holding that a photographic array of men with facial hair, where the suspect had been described as without facial hair, was not unnecessarily suggestive).

The Court finds that the state appellate court reasonably determined that the pre-trial identification procedure was "not impermissibly suggestive so as to give rise to a substantial likelihood of misidentification." *Plancarte*, 232 P.3d at 191.   Because Applicant's claim fails on the first prong of the due process inquiry, there is no need to consider whether the identifications were nonetheless reliable in view of the totality of the circumstances.   Applicant is not entitled to federal habeas relief for claim seven.

---

[18]Supplemental State Court R., Exhibits, at 22-61.

### C.   Claim Eight

In claim eight, Applicant challenges the sufficiency of the evidence to support his

convictions.   Specifically, he asserts that the victim's testimony identifying him as the

perpetrator of the assaults was not credible and the pre-trial identification procedure

was impermissibly suggestive. (Docket No. 1, at 72-73). He contends that absent the

unreliable identification evidence, the jury would have acquitted him based on the

testimony of his alibi witnesses.   (*Id.*).

A constitutional challenge to the sufficiency of the evidence is governed by

*Jackson v. Virginia*, 443 U.S. 307 (1979).   Evidence is sufficient to support a conviction

as a matter of due process if, "after viewing the evidence in the light most favorable to

the prosecution, *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." *Coleman v. Johnson*, ____ U.S. ____, 132 S.Ct.

2060, 2064 (2012) (quoting *Jackson*, 443 U.S. at 319) (emphasis in the original).   The

court looks at both direct and circumstantial evidence in determining the sufficiency of

the evidence.   *See Lucero v. Kerby,* 133 F.3d 1299, 1312 (10th Cir. 1998).   A federal

habeas court's review under *Jackson* is "sharply limited, and a court faced with a record

of historical facts that supports conflicting inferences must presume-even if it does not

affirmatively appear in the record-that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution." *Turrentine v. Mullin*, 390

F.3d 1181, 1197 (10th Cir. 2004) (quotations and alterations omitted).   *See also*

*Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (in reviewing the sufficiency of

the evidence, the federal habeas court "may not weigh conflicting evidence nor consider

the credibility of witnesses," but must "'accept the jury's resolution of the evidence as

24

long as it is within the bounds of reason.'") (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Furthermore, the federal habeas court may not reject witness testimony in the context of a sufficiency of the evidence challenge unless the testimony is "'unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *Rea v. Suthers*, No. 10-1320, 402 F. App'x 329, 331 (10th Cir. Nov. 12, 2010) (unpublished) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir.1991)) (internal quotations and alteration omitted).

In *Plancarte I*, the Colorado Court of Appeals applied a state law standard similar to *Jackson, see* 232 P.3d at 191-92, and rejected Applicant's claim on the following grounds:

> Viewing the evidence in its totality and in the light most favorable to the prosecution, we conclude that it was sufficient to sustain defendant's convictions beyond a reasonable doubt.
>
> On the night of the attacks, B.T. and M.S. each provided a description and helped create a composite drawing of her assailant, and the two composites were very similar. Each victim identified defendant as her assailant in the out-of-court identification and in-court identification.
>
> B.T. testified that she was one hundred percent sure that defendant was the attacker, and stated that she observed her assailant face-to-face for about six seconds and was able to see him clearly in her well-lit home.
>
> M.S. testified that there was no question in her mind that defendant was the attacker. Although B.T. and M.S. described the perpetrator to police as several inches taller than defendant, this inconsistency does not render their testimony incredible as a matter of law.
>
> From this evidence, a juror could reasonably have concluded beyond a reasonable doubt that defendant was the perpetrator in the charged crimes. Furthermore, the jury's guilty verdict indicates that it

believed the testimony of B.T. and M.S., and not the testimony of the defense witnesses.

Therefore, we conclude that the evidence was sufficient to support a finding that defendant was guilty of the crimes charged beyond a reasonable doubt.

*Plancarte I*, 232 P.3d at 191-92.

The state court record supports the Colorado Court of Appeals' factual findings that the testimony of the two victims was credible, even if there were conflicts in their descriptions of the perpetrator.[19]   Although Applicant urges the Court to discount the victims' identification testimony and instead credit the testimony of his alibi witnesses, that is not the federal habeas court's function where the jury's resolution of conflicts in the evidence was "within the bounds of reason." *Messer*, 74 F.3d at 1013.   The victims' descriptions of their attacker to the police were generally consistent and fit the Applicant.[20]   And, Applicant does not point to any clear and convincing evidence to demonstrate that the victims' testimony was incredible as a matter of law.   As such, the state appellate court's determination that the victim's testimony was legally sufficient to support the jury's verdict finding Applicant guilty of the assaults was not an unreasonable application of the *Jackson* standard, nor was it based on an unreasonable determination of the facts.   Applicant is not entitled to federal habeas relief for claim eight.

## IV.   MISCELLANEOUS MOTIONS

### A.   Request for Leave to Amend

---

[19] *See* State Court R., 8/16/06 Trial Tr. (afternoon session), at 30-63; 8/17/06 Trial Tr., at 90-105.

[20] *See id.* at 36-38; 76-78; 84-85; 8/17/06 Trial Tr., at 93-94.

In the Reply, Applicant requests leave to amend the Application to reinstate claim six, newly revised as a federal constitutional claim.   (Docket No. 35, at 2-5).

Claim six– asserting that the state post-conviction court erred in failing to hold an evidentiary hearing–was dismissed in the March 10, 2015 Order to Dismiss in Part (Docket No. 23) because the claim raised an issue of state law only, which failed to invoke this Court's federal habeas jurisdiction.   *See* 28 U.S.C. § 2254(a) (federal habeas relief is warranted where state prisoner's custody violated the United States Constitution or other federal law); *see also Estelle v. Mcguire*, 502 U.S. 62, 67 (1991) (habeas corpus does not lie to correct errors of state law); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (alleged errors in the State's post-conviction remedy are not grounds for § 2254 review); *accord   Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (recognizing that the Constitution does not require the states to grant post-conviction review).

Applicant does not explain how he would revise claim six to state an alleged violation of federal law.   Furthermore, the new claim would be procedurally barred because Applicant's failure to raise it on direct appeal or in the state post-conviction proceeding constitutes a procedural default, for which he cannot demonstrate cause and prejudice or a fundamental miscarriage of justice. (*See* Order to Dismiss in Part, Docket No. 23, at 7-9).   Accordingly, the request to amend will be denied.

### B.   Requests for Discovery, the Appointment of Counsel, and a Hearing

Applicant has also filed a Memorandum of Law in Support of a Request for an Evidentiary Hearing and Appointment of Counsel (Docket No. 37), and a Memorandum of Law in Support of a Motion for Leave to Conduct Discovery and Fact-Finding

Procedures (Docket No. 38), which have been docketed as pending motions.

The Court has determined that the § 2254 Application can be resolved based on the existing record.   As such, no evidentiary hearing or discovery is warranted, nor is it necessary to appoint counsel.   *See Torres v. Mullin,* 317 F.3d 1145, 1161 (10th Cir. 2003); Fed. R. Governing Section 2254 Cases 8(a) and 8(c).   This is not a case where the state court applied an improper legal standard and disputed issues of fact remain for the federal district court.   *Cf. Milton v. Miller*, 744 F.3d 660, 673 (10th Cir. 2014) (remanding case to district court for evidentiary hearing where the state appellate court's decision did not survive scrutiny under § 2254(d)(1), and disputed issues of fact existed that precluded the court of appeals from completing a de novo review of petitioner's ineffective assistance of appellate counsel claim).

## V.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), filed by Andrew Plancarte on November 25, 2014, is DENIED and this action is DISMISSED WITH PREJUDICE.   It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied.   The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith   *See Coppedge v. United States*, 369 U.S. 438 (1962).   If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.   It is

FURTHER ORDERED that Applicant's request for leave to amend, raised in his Reply brief (Docket No. 35, at 2-5), is DENIED.   It is

FURTHER ORDERED that the Memorandum of Law in Support of a Request for an Evidentiary Hearing and Appointment of Counsel (Docket No. 37), and the Memorandum of Law in Support of a Motion for Leave to Conduct Discovery and Fact-Finding Procedures (Docket No. 38), are DENIED AS MOOT.   It is

FURTHER ORDERED that the Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (ECF No. 36) is DENIED as moot.   Applicant paid the $5.00 filing fee on December 10, 2014 (ECF No. 7).

Dated June 29, 2015, at Denver, Colorado.

BY THE COURT:

R. Brooke Jackson
United States District Judge